]IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

KENNETH JOHNSON and CERONE
MCTAVOUS, individually and on behalf of
all persons similarly situated,

                                  Plaintiffs,

    v.                                                 Action No. 3:10–CV–213

CARMAX, INC. and CARMAX AUTO
SUPERSTORES, INC.,

                                  Defendants.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss or Alternatively to Stay Pursuant to the Federal Arbitration Act (Dock. No. 14). For the reasons stated below, the Court will GRANT the Motion to Dismiss. Plaintiffs' Motion to Defer Ruling on Defendants' Motion to Dismiss (Dock. No. 24) will be DENIED.

**I. BACKGROUND**

Plaintiff Kenneth Johnson worked on automobiles as detailer for Defendant CarMax Auto Superstores, Inc. ("CarMax") in Irving, Texas from July 2007 to December 2009.[1] Plaintiff Cerone McTavous has worked as a detailer at a CarMax store in Orlando, Florida since 2003.

To be considered for a position at CarMax, Plaintiffs had to sign a Dispute Resolution

---

[1] Plaintiffs also assert their claims against Defendant CarMax, Inc. In its memorandum in support of its motion to dismiss, CarMax Auto Superstores, Inc. notes that Carmax, Inc. is a holding company that does not employ any associates. (CarMax Memo. 1 n.1.)

1

Agreement. The Agreement mandates that both CarMax and the applicant settle "any and all previously unasserted claims, disputes, or controversies arising out of or relating to [this] application or candidacy for employment and employment and/or cessation of employment with CarMax, exclusively by final and binding arbitration before a neutral Arbitrator." (CarMax Memo., Ex. 1.)[2] The Agreement further states that any arbitration will be conducted in accordance with the "CarMax Dispute Resolution Rules and Procedures." The Rules and Procedures are not part of the six-page Agreement, but by signing the Agreement, the applicant agrees that he has "read this Agreement and understand[s] that [he] should read the Dispute Resolution Rules and Procedures prior to accepting an offer of employment with CarMax." (CarMax Memo., Ex. 1.) McTavous signed the Agreement on March 18, 2003. Johnson signed the Agreement on July 19, 2007. Both were eventually hired by CarMax.

Rule 2 of the Rules and Procedures controls the scope of the arbitration agreement. It requires that "any and all employment-related legal disputes . . . arising out of . . . an Associate's . . . employment with . . . CarMax . . . shall be settled exclusively by final and binding arbitration . . . ." The Rule goes on to expressly state that an example of a claim covered by the arbitration agreement is a claim arising under the Fair Labor Standards Act.

The Rules also control the arbitration process itself. Rule 7 states that both parties have the right to be represented by counsel of their choosing. Rule 9 prohibits the

---

[2] There are some differences between the Agreements signed by the Plaintiffs, however, none appear to be relevant to this dispute. Whether there are differences between the Rules referenced in the Agreements signed by the Plaintiffs is unknown at this point. CarMax has only provided one version of the Rules. Plaintiffs have not made any objection on this point.

arbitrator from consolidating claims of different individuals into one proceeding and further states that the arbitrator may not hear an arbitration as a class action. The Rules require the arbitrator to apply the substantive law applicable to the claims at issue and specifically allows the associate to seek any available remedy under that law. Rule 6 specifies that the arbitration should occur in the city nearest to where the employee was employed. Under the Rules, CarMax must pay certain costs of the arbitration, such as the filing and administrative fees, hourly charges by the arbitrator, and room rental fees.

In March 2010, Plaintiffs filed their Complaint, asserting that by failing to pay Plaintiffs overtime premium pay calculated at one and one-half times their regular rate of pay for all hours worked over forty hours during a workweek, CarMax had violated the Fair Labor Standards Act ("FLSA"). The case is styled as a collective action, meaning that other similarly situated individuals may "opt in" and join Johnson and McTavous as a plaintiffs to the action. 29 U.S.C. § 216(b). Thus far, only these two individuals have opted in.

CarMax has now filed this Motion to Dismiss, or Alternatively to Stay, contending that the claims must go to arbitration on an individual basis under the parties' arbitration agreement. Plaintiffs oppose the Motion and also maintain that at a minimum the Court should grant discovery to ascertain the circumstances surrounding CarMax's adoption of the consolidation prohibition in the arbitration Rules.

## II. DISCUSSION

Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has long recognized and

3

enforced a liberal federal policy favoring arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). A party can compel arbitration if it establishes: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.'" Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).

Here, there is no debate that the parties have a dispute concerning overtime pay, that the parties' relationship touches interstate commerce, and that Plaintiffs are refusing to arbitrate the dispute. The parties disagree, however, on whether a valid written agreement exists that includes an arbitration provision which covers the dispute. Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

To decide which state's law to apply, the Court must first decide which conflicts rules to apply. Although Plaintiffs' suit arises under federal law, the federal statute in this case incorporates a matter which is the subject of state law. In a similar situation, the Fourth Circuit held that a federal court facing a federal question that incorporates a state law issue should apply the conflicts rules of the state in which it sits absent a compelling

4

federal interest dictating otherwise. See In re Merritt Dredging Co., 839 F.2d 203, 206 (4th Cir. 1988); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Here, no "overwhelming" federal interest readily comes to mind; moreover, it would actually be more of an anomaly to interpret the Agreements in this case using a different state's law depending on whether the claim was a federal question claim or a state law contract claim brought under the diversity statute. See In re Merritt Dredging Co., 839 F.2d at 206. As a result, Virginia's conflicts rules apply, which mandate that the law of the place where the contract was made governs questions of interpretation, validity, and enforceability of a contract.[3] Johnson v. MPR Assocs., Inc., 894 F. Supp. 255, 258 n.1 (E.D. Va. 1994). Hence, as to Johnson's contract the Court must apply Texas law and as to McTavous's contract the Court must apply Florida law.

Under either Texas or Florida law, or most likely the law of every state for that matter, the Court's job is to give effect to the contract the parties made, with a preference for an interpretation that reconciles all of the terms of the agreement. Whitley v. Royal Trails Prop. Owners' Ass'n, Inc., 910 So.2d 381, 385 (Fla. Dist. Ct. App. 2005); Healthcare Cable Sys., Inc. v. Good Shepherd Hosp., Inc., 180 S.W.3d 787, 791 (Tex. App. 2005). Moreover, the contract's terms should be given their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used such terms in a technical or different sense. Equitable Life Assurance Soc. of U. S. v. Pinon, 344 So.2d 880,

---

[3] In any event, if the Court were to apply the federal common law of conflicts, which generally requires courts to apply the law of the forum with the greatest interest in the litigation, see, e.g., In re Koreag, Controle et Revision S.A., 961 F.2d 341, 350 (2d Cir. 1992), the end result would not change for either Plaintiff.

882 (Fla. Dist. Ct. App. 1977); Healthcare Cable Sys., 180 S.W.3d at 791. In this case, those principles lead the Court to find that Plaintiffs' claims are covered by the arbitration provision in their Agreements. Plaintiffs and CarMax each agreed under the CarMax Dispute Resolution Rules and Procedures, which were incorporated into their Agreement, that "any and all employment-related legal disputes . . . arising out of . . . an Associate's . . . employment with . . . CarMax . . . shall be settled exclusively by final and binding arbitration . . . ." The Rules expressly state that an "employment-related legal dispute," includes a claim arising under the Fair Labor Standards Act. Additionally, the Rules mandate that the arbitration should be conducted on an individual, not collective basis. The Rules state the "Arbitrator shall not consolidate claims of different Associates into one proceeding . . . ." Rule 6 further states that any arbitration that occurs shall be held in the city nearest the location where the employee was employed with CarMax. The plain language of these provisions clearly prohibits Plaintiffs from bringing their claim in this Court and furthermore from pursuing this claim on a collective basis in any forum.

Plaintiffs attempt to circumvent this result by asserting that the Rules do not mention "collective actions" under Section 16 of the FLSA. For support, they cite several federal district court cases out of the Southern District of Florida which deal with the distinction between a class action under Federal Rule of Civil Procedure 23 and a collective action under Section 16(b) of the FLSA. Those cases, however, do not confront the arbitration agreement binding on the parties in this case. Although Plaintiffs correctly note that the FLSA permits collective actions in contrast to class actions, which are representative in nature, Plaintiffs cannot escape that the Agreement covers FLSA claims

whether those claims are brought individually or collectively or as a class.

The parties' discussion of the recent Supreme Court case of <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 130 S. Ct. 1758 (2010), which confronted whether a party could be forced to arbitrate claims as a class action when the arbitration agreement was silent on the issue, need not be addressed here, because the Agreement is not silent on the issue.

Plaintiffs next argue that if the Agreements are interpreted to cover this dispute, they are unconscionable contracts of adhesion that cannot be enforced. Under both Florida and Texas law, unconscionability requires two aspects: procedural and substantive unconscionability. <u>La Torre v. BFS Retail & Commercial Operations, LLC</u>, No. 08-22046, 2008 WL 5156301, at *3-5 (S.D. Fla. Dec. 8, 2008); <u>AutoNation USA Corp. v. Leroy</u>, 105 S.W.3d 190, 198 (Tex. App. 2003). Procedural unconscionability focuses on the circumstances surrounding the creation of the arbitration provision; substantive unconscionability focuses on the fairness of the arbitration provision itself. <u>La Torre</u>, 2008 WL 5156301, at *3-5; <u>AutoNation</u>, 105 S.W.3d at 198.

Plaintiffs assert the Agreements are procedurally unconscionable because the unequal bargaining power of the parties and the fact that they were unemployed when they entered into the contracts made the Agreements contracts of adhesion. The Agreements are substantively unconscionable, Plaintiffs say, because barring collective actions would provide CarMax with a significant advantage due to the economic realities of prosecuting individual FLSA claims. Plaintiffs also note they did not read the Agreements before signing them. Lastly, Plaintiffs suggest that if the Court is unwilling to find the Agreements unconscionable, then they should be granted leave to take limited discovery to

7

request information from CarMax on whether it viewed the Agreements at issue as applying to collective actions.

These arguments are unpersuasive. The Agreements, as interpreted, are not unconscionable. The alleged unequal bargaining power in this case is insufficient to support procedural unconscionability. La Torre, 2008 WL 5156301, at *3-5; In re Halliburton Co., 80 S.W.3d 566, 572 (Tex. 2002). Prohibiting consolidated suits is not substantively unconscionable either. See La Torre, 2008 WL 5156301, at *5 (concluding that class action waiver in arbitration agreement not substantively unconscionable); Marsh v. First USA Bank, 103 F. Supp. 2d 909, 924 (N.D. Tex. 2000) (concluding that class action waiver in arbitration agreement was enforceable). Requiring Plaintiffs to arbitrate their claims individually does not diminish either the remedial or protective functions of the FLSA. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987) (holding that an arbitration agreement may be invalidated if party opposing arbitration shows that Congress intended another federal statute to preclude waiver of that statute's judicial remedy). Moreover, all of the remedies available under the FLSA will be available in arbitration. Accordingly, Plaintiffs' statutory rights will be adequately preserved in arbitration, even in the absence of a collective action.

Plaintiffs, in their opposition memorandum and a separate motion, request the opportunity to conduct discovery regarding the genesis of CarMax's arbitration agreement provisions, should the Court consider granting this Motion. However, neither Plaintiffs' filings nor anything else in the record present circumstances in which additional discovery would change the Court's conclusion.

The final issue the Court must resolve is whether this case should be dismissed or stayed. Although section 3 of the FAA provides for a stay of any lawsuit until arbitration has been completed, this rule "was not intended to limit dismissal of a case in the proper circumstances." Alford v. Dean Witter Reynolds Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). As a result, the Court will dismiss the case as all issues presented by Plaintiffs' Complaint are subject to the parties' arbitration agreement. Retaining jurisdiction and staying this action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy, but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. See 9 U.S.C. §§ 9-12.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss.

Let the Clerk send a copy of this Memorandum to all counsel of record. An appropriate order will issue.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __14th__ day of July 2010

9